# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| LYMTAL INTERNATIONAL, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | NO. CIV-10-0688-HE |
| | ) | |
| CHUBB CUSTOM INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Plaintiff Lymtal International, Inc. ("Lymtal") filed this breach of contract and bad faith action against its insurer, Chubb Custom Insurance Company ("Chubb"), claiming Chubb has refused to provide it with a defense in a products liability action filed in Oklahoma state court. Chubb has moved for summary judgment, contending the Total Pollution Exclusion in the commercial liability policy it issued Lymtal excludes coverage for the claims asserted against Lymtal in the state lawsuit. Lymtal responded with a Fed.R.Civ.P. 56(f) motion, asking the court to dismiss Chubb's summary judgment motion to allow it to conduct discovery pertaining to a latent ambiguity in the insurance policy. Chubb then filed a motion asking the court to stay discovery pending resolution of its summary judgment motion.

### Background[1]

LymTal manufactures chemicals which are mixed together to form an industrial coating. It distributes its product through retailers to professionals, who apply the product

---

[1] The facts are taken from the complaint and the parties' motions and exhibits.

using a high pressure paint sprayer to create a rubbery coating similar to a bed liner. Kevin Miller, who had purchased plaintiff's product from one of its retailers, Warner Industries, Inc., d/b/a Perma-Tech Industrial Coatings ("Warner"), sued Warner in Oklahoma district court, asserting claims of defective design and manufacturing and failure to warn. He alleged he sustained bodily injuries when he was exposed to airborne particles during the spraying process. Warner filed a third party petition in the state court suit against LymTal, seeking indemnification and contribution.

LymTal had previously purchased a general liability insurance policy from Chubb with an annual premium of $41,280.00. The policy provided two general categories of coverage – (1) bodily injury and property damage and (2) advertising injury and personal injury liability – and included a duty to defend LymTal against suit. Plaintiff's motion to dismiss, Exhibit 1. The policy excluded coverage for "**bodily injury, property damage, advertising injury** or **personal injury** arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants." *Id*. The policy defines pollutants as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste." *Id*. When Chubb denied LymTal's request for defense and indemnification, relying on the policy's pollution exclusion, plaintiff filed this breach of contract action.

In its summary judgment motion, Chubb asserts that it has not breached its contractual duties because the pollution exclusion "unambiguously precludes coverage for bodily injury arising from the discharge, release or escape of pollutants which explicitly includes vapors,

2

fumes or chemicals." Defendant's motion for summary judgment, p.2. Chubb notes in its brief that "Michigan, unlike some jurisdictions, interprets the pollution exclusion to preclude coverage for non-traditional exposure to pollutants." *Id*. at p. 9. Plaintiff contends the court must defer its ruling on Chubb's motion because it is entitled, under Michigan law, to conduct discovery regarding the existence of a latent ambiguity in the exclusion.

"A latent ambiguity ... is one that does not readily appear in the language of a document, but instead arises from a collateral matter when the document's terms are applied or executed." Shay v. Aldrich 790 N.W.2d 629, 641 (Mich. 2010) (internal quotations omitted). It "exists when the language in a contract appears to be clear and intelligible and suggests a single meaning, but other facts create the necessity for interpretation or a choice among two or more possible meanings." *Id.* (internal quotations omitted). The Michigan Supreme Court has "applied the latent-ambiguity doctrine when extrinsic evidence demonstrates that there is an ambiguity concerning the identity of the intended beneficiary of a promise in a contract." *Id*. at 642. Recently it concluded in Shay that a plaintiff had "shown that the circumstances surrounding the execution of [certain] releases created a latent ambiguity about whom the parties intended to include within the scope of the releases." *Id.* at 644-45. Although the releases discharged "all other persons" from liability to the plaintiff for injuries resulting from a specified occurrence, the court concluded the plaintiff demonstrated through extrinsic evidence that an ambiguity existed with respect to the scope of the release. Chubb argues Shay should be limited to its facts, relying on the Michigan court's statement that it was overruling a prior decision "to the extent that it prohibit[ed] a

3

court from considering extrinsic evidence of the intended scope of a release when an unnamed party [sought] to enforce third-party-beneficiary rights based on broad language included in a release from liability and an ambiguity exist[ed] with respect to the intended scope of that release." *Id.* at 645-45.

While the full extent and potential application of the Shay holding is unclear, the court concludes plaintiff has made a sufficient showing to invoke that aspect of Michigan law which, in a proper case, allows the use of extrinsic evidence to identify the existence of a latent ambiguity. *Id.* at 641. Here, plaintiff asserts that the construction of the contract and/or exclusion urged by defendant, as applied to the facts and circumstances of plaintiff's business, would "eviscerate[] coverage for the sole product LymTal manufactures" and render coverage illusory. Plaintiff's reply, p. 7. There is some Michigan authority suggesting the if a plaintiff makes a "credible claim that the pollution exclusion rendered coverage under the policy illusory", then a result different from that ordinarily flowing from otherwise unambiguous policy/exclusion language might obtain. *See generally* Michigan Mun. Risk Mgt. Auth. v. Seaboard Sur. Co., No. 235310, 2003 WL 21854655 (Mich.Ct.App. Aug. 7, 2003) (unpublished), *appeal denied*, 687 N.W.2d 292 (Mich. 2004). In these circumstances, the court concludes plaintiff is entitled to conduct discovery as to this issue and plaintiff's bad faith claim.

Accordingly, plaintiff's Rule 56 motion to dismiss [Doc. #27] is **GRANTED**. Chubb's motion for summary judgment [Doc. #26] is dismissed, subject to being reasserted, if appropriate. Chubb's motion to stay discovery [Doc. #33] is **DENIED**.

**IT IS SO ORDERED**.

Dated this 15th day of February, 2011.

_____
JOE HEATON
UNITED STATES DISTRICT JUDGE