**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| (1) LYMTAL INTERNATIONAL, INC., a Michigan Corporation, | ) ) ) |
| Plaintiff, | ) Case No. CIV-10-0688-HE |
| v. | ) ) |
| (1) CHUBB CUSTOM INSURANCE COMPANY, a Foreign Corporation, and (2) PARTNERS SPECIALTY GROUP, LLC, a Foreign Limited Liability Company, | ) ) **Attorney Lien Claimed** ) **Jury Trial Demanded** ) ) |
| Defendant. | ) |

**FIRST AMENDED COMPLAINT**

Plaintiff Lymtal International, Inc. ("**Plaintiff**"), by and through its attorneys of record, BROWN & GOULD, PLLC, for its First Amended Complaint against defendants, Chubb Custom Insurance Company ("**Chubb Custom**") and Partners Specialty Group, LLC ("**Partners Specialty Group**"), alleges and states as follows:

**I.
PARTIES**

1. Plaintiff is a corporation organized under the laws of the State of Michigan.

2. Chubb Custom is and at all relevant times was a foreign insurance company authorized to do business in the State of Oklahoma that may be served with process by and through its mandatory designated agent, Kim Holland, Oklahoma Insurance Commissioner, Oklahoma Insurance Department, P.O. Box 53408, Oklahoma City, Oklahoma 73152-3408.

3. Partners Specialty Group is and at all relevant times was a foreign limited

liability company that may be served with process by and through its registered service agent, Corporation Service Company, 115 S.W. 89th Street, Oklahoma City, OK 73139-8511.

## II.
## JURISDICTION AND VENUE

4. This Court has general and original jurisdiction over Plaintiff's claims for breach of contract, bad faith, and negligence.

5. There is complete diversity of citizenship. Plaintiff is a Michigan corporation with its principle place of business in Lake Orion, Michigan. Chubb Custom is a foreign corporation with its principal place of business in Delaware. Partners Specialty Group is a foreign limited liability company incorporated in Delaware whose principal place of business is in Missouri. Plaintiff is also seeking damages in excess of $75,000.00, exclusive of interest and costs. Thus, all jurisdictional requirements set forth in 28 U.S.C. § 1332 are met.

6. Venue is proper in Oklahoma because it is a state where Defendants conduct business and where Defendants have a registered service agent for the service of process and/or have an insurance agent.

7. All conditions precedent to instituting this action have occurred, been performed, were waived or have otherwise been satisfied.

## III.
## STATEMENT OF FACTS

Plaintiff incorporates all of its prior allegations by reference.

8. Plaintiff is a Michigan-based corporation who is in the business of the

development, manufacture and sale of waterproofing products, such as the Perma-Tech Product, which consists of chemicals Plaintiff manufactures to form a rubber-like industrial coating.

9. Chubb Custom is in the business of selling general liability insurance, including specialty (or "**surplus**") lines insurance coverage, to commercial businesses within the State of Oklahoma and Michigan.

10. Partners Specialty Group is a wholesale insurance broker who is in the business of acting as an intermediary with insurance companies on behalf of its corporate clients in the surplus lines insurance marketplace.

11. In the standard insurance marketplace, insurance brokers act on behalf of their clients to procure insurance coverage from insurance companies who operate within and are licensed and regulated by a client's home state. However, in order to obtain coverage for certain types or risk, brokers often have to obtain insurance coverage for their corporate clients from insurance companies who do *not* operate within a client's home state and are thus not licensed or regulated by that state. This marketplace for insurance coverage is known as the specialty or "surplus" lines marketplace. Partners Specialty Group operates in this surplus lines marketplace to obtain surplus lines insurance coverage on behalf of its corporate clients.

12. Beginning in or around early 2009, Plaintiff sought a renewal of its insurance coverage for the May 2009-2010 policy year. Because it could not find any insurance company licensed within the sate of Michigan that provided products liability coverage for

chemical manufacturers, Plaintiff's agent had to seek coverage in the surplus lines market.

13. Plaintiff's original wholesale broker ceased business operations sometime before April 2009. Accordingly, Plaintiff and its agent had to find a new wholesale broker through which to purchase general liability insurance for the next annual term beginning on or about May 2, 2009.

14. On or about April 7, 2009, Plaintiff appointed Partner's Specialty Group to serve as its wholesale broker of record ("**BOR**") for purposes of negotiating the terms of coverage for the May 2009-2010 policy term. The following day, an environmental broker with Partners Specialty Group advised Chubb Custom that it would be serving as Plaintiff's BOR and would be negotiating the terms of coverage on behalf of Plaintiff.

15. On or about April 9, 2009, Chubb Custom accepted Partners Specialty Group's BOR letter and assigned the account to one of its underwriters, Anthony Engel ("**Engel**"), to negotiate the terms of coverage.

16. Partners Specialty Group entered into an agreement with Plaintiff to procure products liability coverage for the chemicals Plaintiff manufactures.

17. The agreement between Plaintiff and Partners Specialty Group for Partners Specialty Group to procure product liability coverage for the chemicals Plaintiff manufactures was a valid and enforceable contract under law.

18. As Plaintiff's BOR, Partners Specialty Group owed a duty to Plaintiff to procure the products liability coverage Plaintiff requested and to advise Plaintiff if it failed

to do so.

19. After accepting Plaintiff's appointment as BOR, Partners Specialty Group, by and through its Vice President and Casualty and Environmental Broker, Cathy Griffin ("**Griffin**"), negotiated the terms of Plaintiff's insurance coverage with Chubb Custom for the May 2009-2010 term.

20. During the course of the negotiations, both Chubb Custom and Partners Specialty Group acknowledged that Plaintiff sought product liability coverage for the chemicals Plaintiff manufactures.

21. Specifically, on April 13, 2009, Engel emailed Griffin and acknowledged that the negotiations for coverage for Plaintiff "definitely needs your environmental expertise." He further stated that Chubb Custom usually did <u>not</u> insure chemical manufactures but had agreed to insure Plaintiff because it was "part of a much larger book of business" from Plaintiff's former wholesale broker.

22. Thereafter, Engel prepared a "General Liability Risk Report" regarding Plaintiff's insurance coverage. In his report, Engel acknowledged that the coverage he was underwriting would, in fact, expose Chubb Custom to claims for "*Toluene*" exposure, one of the chemicals involved in Plaintiff's manufacture of its industrial coating.

23. Engel and Griffin continued to negotiate the terms of coverage for Plaintiff, and on or about May 1, 2009, Chubb Custom agreed to "bind" coverage for Plaintiff in an email to Griffin.

24. A "binder of coverage" is an insurance industry term of art that indicates that an insurance company has agreed to provide coverage for an insured before a policy has been officially issued. Thus, a binder of coverage results in an insurance company providing coverage to an insured while the insurance company and insured process and execute the policy documents necessary to effectuate coverage for the policy term.

25. Thus, beginning on or about May 1, 2009, Plaintiff was covered by Chubb Custom for the May 2009-2010 term pending Chubb Custom's issuance of a renewed policy.

26. On or about June 11, 2009, Chubb Custom issued Plaintiff a General Liability Insurance Policy bearing policy number 7956-50-80 (the "**Policy**"), with an effective date of May 2, 2009, for purposes of insuring under the terms and conditions, the general liability Plaintiff may incur as a result of an occurrence while the Policy was in force and effect.

27. Pursuant to the terms and conditions of the Policy, Chubb Custom had a duty to provide Plaintiff with a defense to any civil lawsuit filed against Plaintiff for damages resulting from an occurrence covered by the Policy.

28. In 2008, one of Plaintiff's customers, Warner Industries, Inc., d/b/a Perma-Tech Industrial Coatings ("**Warner**") was sued by an individual Kevin T. Miller ("**Miller**"), for injuries he allegedly sustained by the defective and unreasonable condition of chemicals manufactured and sold by Plaintiff to Warner and which Warner later sold to Miller. The lawsuit was filed in the District Court of Oklahoma County, Case No. CJ-2007-9750 ("**State Court Action**"). Specifically, Miller alleged that he was injured by the defective and unreasonable condition of the chemicals as a result of either their manufacture, design or

failure to warn.

29. Later, on January 8, 2010, Warner filed its Third-Party Petition of Defendant Warner Industries Against Lymtal International in the State Court Action. In the Third-Party Petition, Warner seeks indemnification and contribution from Plaintiff pursuant to Oklahoma law.

30. Chubb Custom has received notice of the pendency of the State Court Action against Plaintiff.

31. Plaintiff has demanded that Chubb Custom provide Plaintiff with a defense to the State Court Action.

32. Even though Chubb Custom knew it had a duty to provide Plaintiff with a defense to the State Court Action, it arbitrarily, inexplicably and unreasonably failed and refused to do so.

33. Chubb Custom has therefore breached its contractual obligations under the Policy by failing and refusing to provide Plaintiff with a defense to the State Court Action.

34. Chubb Custom's unwillingness to provide Plaintiff with a defense is patently unreasonable and constitutes bad faith.

35. As a result of Chubb Customs's unreasonable breach of its contractual obligations, Plaintiff has had to incur thousands of dollars in attorneys fees to hire counsel to defend it in the State Court Action.

36. Alternatively, to the extent the Policy does not provide coverage for and/or a duty to defend Plaintiff in the State Court Action, Partners Specialty Group's failure to procure products liability coverage for the chemicals Plaintiff manufactures is a breach of

its contract with Plaintiff to procure insurance.

37. Furthermore, Partners Specialty Group failed to advise Plaintiff that it had failed to procure products liability coverage for the chemicals Plaintiff manufactures. Therefore, Partners Specialty Group is in breach of its duty to procure insurance coverage for Plaintiff and of its duty to advise Plaintiff of its failure to procure insurance.

38. Even though Partners Specialty Group knew it had a duty to procure products liability coverage for Plaintiff for the chemicals Plaintiff manufactures and to advise Plaintiff that it failed to procure insurance as requested, it inexplicably failed and refused to do so.

39. As a result of Partners Specialty Group's breach of its contractual and common law obligations, Plaintiff has had to incur thousands of dollars in attorneys fees to hire counsel to defend it in the State Court Action.

## IV.
## THEORIES OF RECOVERY
### A.
### FIRST CLAIM
### BREACH OF CONTRACT AGAINST CHUBB CUSTOM

Plaintiff incorporates all of its prior allegations by reference.

40. Chubb Custom has arbitrarily and capriciously breached the insurance contract by denying payment of benefits to Plaintiff when benefits were clearly covered under the Policy and by refusing to provide Plaintiff with a defense to the State Court Action.

41. As a result of Chubb Custom's breach of the insurance contract, Plaintiff has been injured and damaged and is entitled to recover those damages from Chubb Custom.

WHEREFORE, Plaintiff prays for judgment against Chubb Custom on its First Claim for the following relief:

a. Compensatory damages against Chubb Custom in an amount in excess of $75,000.00, including but not limited to, unpaid benefits and contractual interest on benefits owed;

b. Prejudgment and post judgment interest;

c. Costs, including but not limited to court costs, expert fees, attorney's fees and expenses; and

d. Such other and further relief as the Court deems appropriate under the circumstances presented.

## B.
## SECOND CLAIM
## BAD FAITH AGAINST CHUBB CUSTOM

Plaintiff incorporates all of its prior allegations here by reference.

42. Chubb Custom has knowingly and intentionally handled the insurance claim of Plaintiff as a matter of routine business practice in handling like claims under like policies.

43. Chubb Custom has intentionally and wrongfully refused to defend Plaintiff in the State Court Action.

44. Chubb Custom breached its duty to deal fairly and act in good faith towards Plaintiff by:

a. failing and refusing coverage and other policy benefits due Plaintiff at a time when it knew that Plaintiff was entitled to those benefits and refusing to defend Plaintiff in the State Court Action;

b. failing to properly investigate Plaintiff's claim and to obtain additional information in connection with said claim;

c. withholding payment of the benefits even though it knew Plaintiff's claim for those benefits were valid;

d. refusing to honor Plaintiff's claim for reasons contrary to the express provisions of the subject policy and/or Oklahoma law;

e. refusing to honor Plaintiff's claim by knowingly misconstruing and misapplying provisions, terms and/or definitions of the Policy;

f. failing to adopt and implement reasonable standards for the prompt investigation and reasonable handling of claims arising under the Policy, to include Plaintiff's claim;

g. not attempting in good faith to effectuate a prompt, fair and equitable settlement of Plaintiff's claim once liability had become reasonably clear;

h. forcing Plaintiff, pursuant to Chubb Custom's standard claims practice, to retain counsel in order to secure benefits Chubb Custom knew were payable; and

i. failing to properly evaluate any investigation that was performed.

45. As a proximate result of Chubb Custom's breach of its duty of good faith and fair dealing, Plaintiff has suffered aggregate damages and other losses in excess of $75,000.00, in the form of policy benefits, financial hardship, attorney expenses and other incidental damages.

46. Chubb Custom has acted intentionally and with malice towards Plaintiff and has been guilty of reckless disregard for the rights of Plaintiff, entitling it to punitive damages.

47. Oklahoma is the state with the most significant relationship to Chubb Custom's tortious refusal to defend the State Court Action because: (a) Oklahoma is the place where the State Court Action was filed; (b) all of the events leading to the filing of the State Court action occurred in Oklahoma; (c) Chubb Custom's investigation of the claim would require investigation of actions which all occurred in Oklahoma; (d) Chubb Custom is licensed to conduct business in Oklahoma; (e) Plaintiff sold the particular product which is the subject of the State Court Action in Oklahoma; (f) Chubb Custom has a duty to defend Plaintiff in

Oklahoma; and (e) Chubb Custom's failure to defend Plaintiff occurred in Oklahoma such that Oklahoma is the place where the injury occurred and the place where the conduct causing the injury occurred.

WHEREFORE, Plaintiff prays for the following relief against Chubb Custom:

a. Compensatory damages against Chubb Custom in an amount in excess of $75,000.00, including but not limited to unpaid benefits and contractual interest on benefits owed;

b. Punitive damages;

c. Prejudgment and post-judgment interest on all damages;

d. Costs, including but not limited to court costs, expert fees, attorney's fees and expenses; and

e. All further relief as the Court deems appropriate under the circumstances presented.

## C.
### THIRD CLAIM
### BREACH OF CONTRACT AGAINST PARTNERS SPECIALTY GROUP

Plaintiff incorporates all of its prior allegations here by reference.

48. Partners Specialty Group has arbitrarily and capriciously breached its contract with Plaintiff by failing to procure insurance coverage for the chemical products Plaintiff manufactures.

49. As a result of Partners Specialty Group's breach of its contract with Plaintiff, Plaintiff has been injured and damaged and is entitled to recover those damages from Partners Specialty Group.

WHEREFORE, Plaintiff prays for judgment against Partners Specialty Group on its Third Claim for the following relief:

    a.    Compensatory damages against Partners Specialty Group in an amount in excess of $75,000.00;

    b.    Prejudgment and post judgment interest;

    c.    Costs, including but not limited to court costs, expert fees, attorney's fees and expenses; and

    d.    Such other and further relief as the Court deems appropriate under the circumstances presented.

## D.
### FOURTH CLAIM
### NEGLIGENCE AGAINST PARTNERS SPECIALTY GROUP

Plaintiff incorporates all of its prior allegations here by reference.

50. Based upon its relationship to Plaintiff as Plaintiff's insurance broker, Partners Specialty Group owed a duty to Plaintiff to procure products liability insurance coverage for the chemicals Plaintiff manufactures and to advise Plaintiff if it failed to procure the insurance coverage Plaintiff requested.

51. Partners Specialty Group negligently failed to procure the products liability insurance coverage for the chemicals Plaintiff manufactures and negligently failed to advise Plaintiff that it had failed to procure the insurance coverage Plaintiff requested.

52. As a result of Partners Specialty Group's breach of its duties to Plaintiff, Plaintiff has been injured and damaged and is entitled to recover those damages from Partners Specialty Group.

WHEREFORE, Plaintiff prays for judgment against Partners Specialty Group on its Fourth Claim for the following relief:

    a.    Compensatory damages against Partners Specialty Group in an amount in excess of $75,000.00;

    b.    Punitive damages;

    c.    Prejudgment and post judgment interest;

    d.    Costs, including but not limited to court costs, expert fees, attorney's fees and expenses; and

    e.    Such other and further relief as the Court deems appropriate under the circumstances presented.

## V.
## PRAYER

WHEREFORE, Plaintiff prays that it be awarded judgment against Defendants and be awarded actual and compensatory damages, together with costs, pre- and post-judgment interest, punitive damages, and attorney's fees, costs, and any other relief as may be appropriate.

Respectfully submitted,

s/ Joshua C. Stockton
George H. Brown, OBA# 18020
Tony Gould, OBA# 18564
Joshua C. Stockton, OBA# 21833
**BROWN & GOULD, PLLC**
136 N.W. 10th Street
Oklahoma City, Oklahoma 73103
Telephone:   (405) 235-4500
Facsimile:    (405) 235-4507
Email: jstockton@browngouldlaw.com

**ATTORNEYS FOR PLAINTIFF,
LYMTAL INTERNATIONAL, INC.**

**CERTIFICATE OF SERVICE**

      I hereby certify that on this 10th day of May, 2011, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

John H. Tucker
Kerry R. Lewis
RHODES, HIERONYMUS, JONES, TUCKER & GABLE, PLLC
P.O. Box 21100
Tulsa, OK 74121-1100
Email:jtucker@rhodesokla.com
       klewis@rhodesokla.com

Robert Anderle
Daniel Gourash
SEELEY, SAVIDGE, EBERT & GOURASH CO
26600 Detroit Road
Cleveland, OH 44145
Email: rdanderle@sseg-law.com
       dfgourash@sseg-law.com
ATTORNEYS FOR DEFENDANT
CHUBB CUSTOM INS. CO.

                                     s/ Joshua C. Stockton
                                       Joshua C. Stockton